United States Courts
Southern District of Texas
FILED

SEP 2 8 2026

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

In re: Subpoena to Ali Choudhri issued in *In re Texas REIT, LLC*, Case No. 24-10120-smr, and *WCW Houston Properties, LLC v. Texas REIT, LLC, et al.*, Adv. No. 24-01045-smr (Bankr. W.D. Tex.)

Misc. Proceeding No. ____________

**NON-PARTY ALI CHOUDHRI'S EMERGENCY MOTION TO QUASH DEPOSITION SUBPOENA AND FOR PROTECTIVE ORDER**

Non-party Ali Choudhri ("Movant"), pro se, moves under Federal Rules of Civil Procedure 26(c) and 45(d)(3), made applicable by Federal Rules of Bankruptcy Procedure 7026 and 9016, to quash the subpoena dated August 28, 2026 (the "Subpoena") issued by plaintiff WCW Houston Properties, LLC ("WCW"). The Subpoena sets Movant's deposition for 10:00 a.m. today, September 28, 2026, at Spencer Fane, LLP in Houston. Movant was never served, and no one contacted him about the deposition until last Friday. He requests an immediate stay of compliance.

## I. FACTS

1. The Subpoena was issued in WCW Houston Properties, LLC v. Texas REIT, LLC, et al., Adv. No. 24-01045-smr (Bankr. W.D. Tex.). Movant is not a party. Because compliance is required in Houston, this Court decides this motion. Fed. R. Civ. P. 45(d)(3). The Subpoena and WCW's return of service are Exhibit A.

2. WCW's process server claims he hand-delivered the Subpoena to Movant on August 31, 2026 at 1100 Commerce Street, Room 1452, Dallas. Room 1452 is the Clerk's Office of the U.S. District Court for the Northern District of Texas. Movant was never in that room that day. Movant was not served and was not tendered any witness fee or mileage. Ex. D.

3. WCW's counsel has had Movant's phone number and email for years but had not contacted him since 2020. On Friday, September 25, 2026, counsel texted Movant asking whether he would appear "Monday." That was the first Movant learned of the deposition. Exs. B, D.

4. Movant responded within hours and was willing to cooperate. He told counsel that he had just learned of the deposition, that counsel had never asked about his availability or conferred with him, and that any date would need to be mutually agreeable. Movant remains willing, once properly served, to review the subpoena, respond to it, and confer on a mutually

agreeable date. Counsel replied that Movant was "obligated to appear Monday," demanded that Movant agree to an order Movant has never been shown, "or we'll do this the hard way," and this morning stated he would "proceed and get a CNA today." Ex. C.

## II. ARGUMENT

### A. Movant was not validly served.

5. Serving a subpoena that requires attendance requires tendering the fee for one day's attendance and the mileage allowed by law. Fed. R. Civ. P. 45(b)(1); 28 U.S.C. § 1821. A subpoena served without that tender is not properly served. *In re Dennis*, 330 F.3d 696 (5th Cir. 2003). WCW's return shows no mileage, and Movant received no fee or mileage. Movant was not served, and WCW did not provide him the witness fee or the mileage. Even the $40 listed on the return would not have been enough, because Rule 45(b)(1) requires the mileage to be tendered too.

6. The return also cannot establish service. It places the delivery in a room Movant never entered. It never states that any fee was actually handed to Movant, gives no facts showing how the server identified him, leaves the Subpoena's own proof-of-service page blank, and recites that it was "Executed in 0 County." At a minimum, WCW should be required to prove service through live testimony before any compliance is ordered.

### B. WCW gave no reasonable time to comply and never conferred.

7. A subpoena that fails to allow a reasonable time to comply must be quashed. Fed. R. Civ. P. 45(d)(3)(A)(i). WCW's first contact with Movant came one business day before the deposition, and WCW has refused to take today's setting off calendar unless Movant agrees to an order he has not seen.

### C. This motion is timely.

8. This motion is filed before the time set for compliance. Movant reserves all other objections to the Subpoena.

## III. RELIEF REQUESTED

Movant asks the Court to (a) immediately stay compliance with the Subpoena; (b) quash the Subpoena; and (c) order that no deposition of Movant proceed unless WCW properly serves him with the required fee and mileage and sets a date agreed by the parties or ordered by the Court.

Dated: September 28, 2026

Respectfully submitted,

*/s/ Ali Choudhri*

Ali Choudhri, pro se
4521 San Felipe, #3201
Houston, Texas 77027
Phone: (281) 630-6627
Email: Ali@jetallcapital.com

**CERTIFICATE OF CONFERENCE**

Movant conferred with M. Kevin Powers, counsel for WCW, by telephone and email on September 25, 2026 and by email on September 28, 2026. WCW would not cancel the deposition unless Movant agreed to an order compelling his appearance. The motion is opposed.

*/s/ Ali Choudhri*

Ali Choudhri

**CERTIFICATE OF SERVICE**

On September 28, 2026, I served this motion and its exhibits by email on M. Kevin Powers (kpowers@spencerfane.com), Eric Terry (eric@howley-law.com), Leslie Luttrell (luttrell@lclawgroup.net), and Stephen Lemmon (lemmon@slollp.com).

*/s/ Ali Choudhri*

Ali Choudhri

Exhibits: A - Subpoena and return of service (Adv. Doc. 151, pp. 4-20); B - Text messages; C - Email thread; D - Declaration of Ali Choudhri

## EXHIBIT LIST

Exhibit A — Subpoena with Exhibits 1, 1-A, 1-B, and return of service (Adv. Doc. 151, pp. 4–20)
Exhibit B — September 25, 2026 text messages with Kevin Powers
Exhibit C — September 25–28, 2026 email thread, "Deposition of Ali Choudhri"
Exhibit D — Declaration of Ali Choudhri

# EXHIBIT A

Subpoena to Ali Choudhri, with Exhibits 1, 1-A, 1-B,
and return of service (Adv. Doc. 151, pp. 4-20)

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Western District of Texas

In re Texas REIT, LLC
Debtor

Case No. 24-10120

(*Complete if issued in an adversary proceeding*)

Chapter 11

WCW Houston Properties, LLC
Plaintiff
v.
Texas REIT, LLC et al
Defendant

Adv. Proc. No. 24-01045

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Ali Choudhri
(*Name of person to whom the subpoena is directed*)

☒ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
| --- | --- |
| Spencer Fane, LLP, 3040 Post Oak Blvd., Suite 1400 Houston, TX 77056 | 09/28/2026 at 10:00 a.m. C.S.T. |

The deposition will be recorded by this method: Stenographically and Video

☒ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
The documents identified on attached Exhibit 1.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/28/2026

CLERK OF COURT

OR

_______________________
*Signature of Clerk or Deputy Clerk*

/s/ M. Kevin Powers
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing (*name of party*) _______________ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ______________________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ______________________________
______________________________
______________________________ on (*date*) ________________ ; or

☐ I returned the subpoena unexecuted because: ______________________________
______________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ______________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**EXHIBIT "1"**

1. All documents reflecting payments made by Texas REIT, LLC (Texas REIT") to Dalio Holdings I, LLC ("Dalio I").

2. All documents reflecting payments made by Texas REIT, LLC (Texas REIT") to Dalio Holdings II, LLC ("Dalio II").

3. All financial statements of Texas REIT, including but not limited to balance sheet, income statements, statements of cash flow, or profit and loss statements.

4. All financial statements of Dalio I, including but not limited to balance sheet, income statements, statements of cash flow, or profit and loss statements.

5. All financial statements of Dalio II, including but not limited to balance sheet, income statements, statements of cash flow, or profit and loss statements

6. All records reflecting any performance, whether partial or complete, by Texas REIT of any of its obligations under the Forbearance And Loan Modification by and between Texas REIT and Dalio I, a copy of which is attached hereto as Exhibit 1-A.

7. All records reflecting any performance, whether partial or complete, by Texas REIT of any of its obligations under the Loan Modification by and between Texas REIT and Dalio I, a copy of which is attached hereto as Exhibit 1-B.

8. All documents reflecting the payment history of the loan between International Bank of Commerce ("IBC") and Texas REIT executed on or about May 28, 2008. This request expressly includes the history of all payments made to any successor or assign of IBC including but not limited to Dalio I and Dalio II.

Exhibit C

FORBEARANCE AND LOAN MODIFICATION AGREEMENT

This Forbearance and Loan Modification Agreement (the "Modification"), is entered by and between Texas REIT, LLC, a Texas limited liability company ("Borrower"), Ali Choudhri ("Guarantor"), and Dalio Holdings I, LLC ("Lender"). Borrower, Guarantor, and Lender are sometimes collectively referred to as the "Parties" and singly referred to as a "Party." The "Effective Date" of this Agreement is August 28, 2020.

## WITNESSETH:

WHEREAS, Lender acquired from International Bank of Commerce ("Assignor") that certain Real Estate Lien Note, executed by Borrower, in the original principal amount of $8,640,000.00, dated May 28, 2008 (the "Note"),secured by that certain Deed of Trust, Assignment of Rents, Security Agreement and Financing Statement recorded under 20080280412 in the Real Property Records of Harris County, Texas {the "Deed of Trust"), incorporated herein for all purposes, and any other property (whether real or personal); described therein (the property covered by the Mortgage, whether real or personal, is referred to as the "Property"), and personally guaranteed by the Guaranty Agreement (the "Guaranty") of Ali Choudhri ("Guarantor"); and

WHEREAS, the Note was accelerated and declared due and payable in full and Lender proceeded to foreclose on the Property; and

WHEREAS, the Parties have agreed to rescind the foreclosure and for Lender to continue forbearance from foreclosure; and

WHEREAS, Borrower, Guarantor and Lender have agreed to this Modification and to modify the terms and provisions of the Note, Deed of Trust, and all other documents or instruments evidencing, securing, modifying or extending, the loan (collectively, the "Loan Documents"), to be effective immediately;

NOW, THEREFORE, for good and valuable consideration, Borrower, Guarantor, and Lender agree as follows:

1. Borrower acknowledges (a) that the Note is, and since the July 27, 2016 Renewal Agreement, has been in a continuous state of default, including but not limited to the following, the existence of material Events of Default, which occurred after the execution of the April 11, 2018 Forbearance Agreement, and which Events of Default have resulted in a Termination of the Forbearance Period described therein, including but not Limited to, WCW Properties, LLC, a purported assignee of the second lienholder ("WCW") filing its Second Amended Petition against Texas REIT in Cause No. 2017-35320 and WCW noticing the real property securing the Loan

Documents for non-judicial foreclosure sale; and that, as a result of these and other material Events of Default, the Forbearance Agreement was rescinded, null and void, and of no force or effect.

2. Borrower acknowledges that, as a result of the foregoing Events of Default, the Note was in default and Lender was entitled to charge for, and collect, interest at the stipulated rate in the Loan Documents of eighteen percent (18%) per annum (the "Maximum Rate"), which interest accrued from and after the date on which the first Event of Default occurred under any one or more of the Loan Documents. Borrower and Guarantor waive any and all rights, defenses, or claims to contest Lender's right and entitlement to charge for, and collect, interest at the Maximum Rate from and after the first Event of Default under any one or more of the Loan Documents.

3. Lender shall refrain from and forgo foreclosure and all other creditor remedies and rights until August 27, 2025 (the "Extended Maturity Date") (the period from August 28, 2021 to the Extended Maturity Date shall be referred to as the "Forbearance Term"). Notwithstanding, Lender may notice and post the Property for foreclosure (but may not conduct a foreclosure sale) during the Forbearance Term. During the Forbearance Term Borrower shall timely:

a) Pay on the 28th day of each month the interest accruing on the compromised and restated total indebtedness from and after August 28, 2020 and

b) Pay all other amounts (but not principal) as required under the Loan Documents from and after August 28, 2020.

The Forbearance Term shall automatically terminate without further notice or delay if Borrower fails to timely make any required payment or in the event of a Termination Event as defined below, or any other breach of this Modification. Borrower and Guarantor waive any and all notices.

4. The Parties have agreed in a Confidential Mutual Release and Settlement Agreement (the "Settlement Agreement") effective as of August 28, 2020 to compromise and restate the total indebtedness owed under the Loan Documents to be in the total amount of $8,677,853.19 (the "Compromised Total Amount"), consisting of two components -- $6,199,564.10 which is the principal and regular contract interest accruals (the "Base Obligation") and $2,478,289.09 which is the additional, default interest accruing prior to the Effective date (the "Additional Default Interest") . Borrower and Guarantor waive and release any and all claims of other offsets or defenses to the obligations and the restated Compromised Total Amount. Interest shall accrue on the Compromised Total Amount at the Maximum Rate from and after August 28, 2020.

5. Lender shall provide Borrower a credit towards the then-outstanding indebtedness in the amount of the Additional Default Interest and interest accruing thereon (the "Default Interest

Credit"), if, and only if, (i) Lender receives payment in full of the indebtedness then owed (including the Prepayment Premium, if any is required, as defined below), less the Additional Default interest and interest accruing thereon or before the Extended Maturity Date, (ii) a Termination Event after the date of this Loan Modification Agreement has not occurred and (iii) no other breach or default has occurred under this Loan Modification Agreement. Lender shall provide an additional credit (the "Mokaram Credit") of $500,000.00 if the Additional Interest Credit is earned and applicable and if, and only if, Mokaram has complied, on or before September 4, 2020 at 5 pm Houston, Texas time, with all conditions precedent stated in in Paragraph 4 of the Confidential Mutual Release and Settlement Agreement dated effective as of August 28, 2020 between Lender, Borrower and others. Each of the following shall be defined as a "Termination Event":

a. Borrower or any affiliate of Borrower with a legal, beneficial, or equitable ownership interest in the Property shall commence a voluntary proceeding, or an involuntarily proceeding shall be commenced against the record Owner of the Property seeking liquidation, receivership, reorganization, or other relief with respect to Borrower under any bankruptcy, insolvency, or other similar law now or hereafter in effect seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official of it or a substantial part to its respective property or the Property itself;
b. The commencement of litigation or legal proceedings against Borrower by any third-party claiming ownership or some form of interest to the Property.
c. The filing or commencement of any indictment, charge or proceeding, whether criminal or civil, pursuant to Federal or state law against Borrower.
d. The posting for foreclosure sale of the Property by any third party other than Lender.
e. Any breach of this Modification.
f. The signing of a judgment or arbitration award for Mokaram against any of the Parties.
g. The signing of a judgment or arbitration award for any person or entity against Texas REIT.

For the avoidance of doubt, Lender shall not be obligated to waive Additional Default Interest (and interest accruing thereon) should a Termination Event occur on or after the date of this Loan Modification Agreement.

6. The Note may be prepaid in its entirety, but not in part, upon payment to Lender of a fee in an amount (the "Prepayment Premium") which is equal to an amount all monthly interest payment obligations that would have been due, if the Note had not been prepaid, through from the prepayment date through the Extended Maturity Date assuming an interest rate of fifteen percent (15.0%). The Prepayment Premium shall be immediately due and payable upon a Termination Event or breach of this Modification.

7. It is the intention of Lender to comply strictly with all applicable usury laws, and there is no intention to contract for, nor shall there ever be collected, charged or received

on this Note, interest in excess of that which would accrue and be payable on the basis of the maximum non-usurious rate permissible under the laws of the State of Texas or the United States, whichever is lower (the "Highest Lawful Rate"). Further, if under any' circumstances the aggregate amounts paid on this Note include amounts which by Jaw are deemed interest and which would exceed the maximum non-usurious amount of interest which could lawfully have been collected on this Note, Borrower stipulates that such. payment and collection will have been and will be deemed to have been the result of mathematical error on the part of both Borrower and Lender, and Lender shall promptly apply the amount of such excess to reduce the outstanding principal balance on this Note and return to Borrower any balance of such excess remaining after such application. All sums paid, agreed to be paid, under this Note to Lender for the use, forbearance or retention of the proceeds in the amount evidenced by this Note shall, to the fullest extent permitted under applicable law, be amortized, prorated and spread throughout the full term of this Note until paid in full, so that the actual rate of interest applicable during the term of this Note is uniform and does not exceed the Highest Lawful Rate. To the extent the Maximum Rate ever exceeds the maximum non-usurious rate permissible under the laws of the State of Texas or the United States, the lowest of these rates shall determine the amount of interest Lender may charge on the Indebtedness. The Parties agree that any calculation of interest which may be lawfully charged, collected, received, and/or contracted for in connection with this loan obligation shall spread interest from the May 28, 2008 inception of the loan.

8. If Borrower defaults in the prompt payment when due of any amount due under the Note, Deed of Trust, this Modification or any other Loan Document relating to the amounts due hereunder or there under including but not limited to the Prepayment Premium (the "Indebtedness"), or otherwise defaults under the Note, Deed of Trust, this Agreement or any other document evidencing or securing the Indebtedness, or any portion thereof, or if Borrower shall fail to pay any part of any other indebtedness to any other person or entity; or if Borrower shall fail to keep and perform any of the covenants or agreements contained in any Loan Document (including this Modification); or if Borrower shall file a voluntary petition in bankruptcy, or make an assignment for the benefit of any creditor, .or is adjudicated a bankrupt or insolvent; or if there is any commencement of any proceeding which seeks the liquidation, reorganization or other similar relief with respect to Borrower or its debts or other liabilities under any bankruptcy, insolvency or other similar law or laws now or hereafter in effect; or if there is the commencement of any proceeding which seeks the appointment of a trustee, receiver, liquidator, custodian or other similar official of Borrower or over any of its property, including the Property; then Lender shall have the right, but not the obligation. to declare the entire Indebtedness immediately due and payable, including, without limitation, the Prepayment Premium, any and all Default Interest or other charges due under any Loan Document, including this Modification, whereupon the Indebtedness immediately shall be due and payable without notice or demand, and Lender further shall have the right, but not the obligation, and without any notice whatsoever to Borrower, to immediately enter upon and take exclusive possession of the Property and thereafter manage, use, lease and otherwise operate same in such manner and by and through such persons, objects, or employees as it may deem proper and necessary.

9. If Borrower fails to insure the Property in such amounts and with such carrier(s) as Lender may reasonably require, or fails to pay any or all ad valorem taxes and/or assessments against the Properly, including interest and penalties, or if Lender enters and takes possession, whether actual or constructive, of the Property following any default or Event of Default by Borrower or Guarantor under any Loan Document, including this Modification, then Lender shall have the right. but not the obligation, to pay any such amounts thereby due and/or owing, or otherwise required as a result of any such act or event. and such fees, expenses and other amounts, including reasonable and necessary attorney's fees and court costs. shall be added to the Indebtedness and shall bear interest at the Maximum Rate (unless the Highest Lawful Rate is less than the Maximum Rate) from the date such costs are incurred.

10. In the event Borrower ever files suit, or otherwise asserts any claim, against the Lender with respect to any matters set forth herein, Borrower agrees that Lender shall be entitled to charge a one-time fee of twenty percent (20%) of the then-outstanding principal balance, as Lender's reasonable and necessary attorney's fees (the "Percentage Fee"). and such amount shall be added to the Indebtedness and shall bear interest at the Maximum Rate (unless the Highest Lawful Rate is Jess than the Maximum Rate) from the date such Percentage Fee is assessed. Borrower further agrees that Lender shall be entitled to charge such Percentage Fee if Lender ever is required to litigate in any judicial or quasi-judicial forum, including arbitration, any claim arising out of. relating to, or otherwise touching upon, this Modification or any other Loan Document, regardless of whether such claim is asserted by Borrower. In the event a court of competent jurisdiction should determine that such a fee is unreasonable or necessary, that Borrower agrees not to contest or otherwise challenge any hourly fee charged by Lender's attorneys and other professionals engaged by Lender in connection with the .enforcement of Lender's rights hereunder. Borrower agrees that Lender's right to its attorney' s fees pursuant to this paragraph, whether as a Percentage Fee or not, shall attach to any claim brought against Lender by any person who challenges, or attempts to delay, impede or otherwise interfere with. or delays, impedes, or otherwise interferes with, in any manner or way whatsoever, Lender's right to foreclose on the Property, regardless of whether such person is a party to this Modification or any other Loan Document.

11. All capitalized terms used herein but not otherwise defined shall have the same meaning given to them in the Loan Documents.

12. This Agreement and the other Loan Documents are performable in Harris County, Texas, which shall be a proper place of venue for suit on or in respect of this Agreement. Borrower and Guarantor irrevocably agree that any legal proceeding relating to this Agreement or the other Loan Documents shall be brought in the United States District Court for the Southern District of Texas, Houston Division, including, without limitation, any bankruptcy proceeding. Notwithstanding anything to the contrary herein the applicable state law related to the Promissory Note and Loan Documents is changed hereby from the State of Texas to the Commonwealth of Virginia, effective immediately.

13. In the event of any dispute, controversy, claim, or demand arising out of or relating to this Agreement or any other Loan Documents or Property, whether in contract, tort, or otherwise, at law or in equity, for damages or any other relief, the parties shall first attempt to settle the dispute by mediation.

14. Nothing herein shall prohibit Lender from posting the Property for a foreclosure sale.

15. Borrower and Guarantor acknowledge the total indebtedness owed and waive any and all defenses based on the passage of time including all statute of limitations. The Parties agree that Lender's lien rights are renewed and extended as permitted and contemplated by Texas Civil Practices and Remedies Code §16.036. Borrower and Guarantor waive any claim or right to any offset against their obligations under this Modificaiton, the Note, the Deed of Trust, the Loan Documents and the Guaranty with respect to any deficiency which may remain after a foreclosure sale, and specifically waive any right to a credit against such obligations based on the fair market value of the Property and any collateral foreclosed upon as stated in Tex. Prop. Code Chapter 51 or any similar statutory right or claim.

16. Except as provided in this Modification, the terms of the Note, Deed of Trust, Loan Documents and Guaranty shall continue in effect.

Executed as of August 28, 2020.

**Texas REIT, LLC**

By: ______________________

Printed Name: Ali Choudhri, Auth Agent

Date: Sept 1, 2020

**Dalio Holdings I, LLC**

By: ______________________

Printed Name: Ali Choudhri, Auth Agent

Date: Sept 1, 2020

**Ali Choudhri**

______________________

Date: Sept 1, 2020

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement (the "Modification"), is entered by and between Texas REIT, LLC, a Texas limited liability company ("Borrower"), Ali Choudhri ("Guarantor"), and Dalio Holdings I, LLC ("Lender"). Borrower, Guarantor, and Lender are sometimes collectively referred to as the "Parties" and singly referred to as a "Party." The "Effective Date" of this Agreement is June 1, 2018.

## WITNESSETH:

**WHEREAS**, Lender acquired from International Bank of Commerce ("Assignor") that certain Real Estate Lien Note, executed by Borrower, in the original principal amount of $8,640,000.00, and dated May 28, 2008 (the "Note"), secured by that certain Deed of Trust, Assignment of Rents, Security Agreement and Financing Statement recorded in Volume 20080284812 in the Real Property Records of Harris County, Texas (the "Deed of Trust"), incorporated herein for all purposes, and any other property (whether real or personal) described therein (the property covered by the Mortgage, whether real or personal, is referred to as the "Property"), and personally guaranteed by the Guaranty Agreement (the "Guaranty") of Ali Choudhri ("Guarantor"); and

**WHEREAS**, the Note has been accelerated and is currently due and payable; and

**WHEREAS**, Borrower and Lender have agreed to this Modification and to modify the terms and provisions of the Note, Deed of Trust, and all other documents or instruments evidencing, securing, modifying or extending, the loan (collectively, the "Loan Documents"), to be effective immediately;

NOW, **THEREFORE**, for good and valuable consideration, Borrower, Guarantor, and Lender agree as follows:

1. Borrower acknowledges (a) that the Note is, and since the July 27, 2016 Renewal Agreement, has been in a continuous state of default, including, but not limited to the following, the existence of material Events of Default, which occurred after the execution of the April 11, 2018 Forbearance Agreement, and which Events of Default have resulted in a Termination of the Forbearance Period described therein, including but not Limited to, WCW Properties, LLC, a purported assignee of the second lienholder ("WCW") filing its second Amended Petition against Texas REIT in Cause No. 2017-35320 and WCW noticing the real property securing the Loan Documents for non-judicial foreclosure sale; and that, as a result of these and other material Events of Default, the Forbearance Agreement is rescinded, null and void, and of no force or effect.

2. Borrower acknowledges that, as a result of the foregoing Events of Default, the Note is in default and Lender reserves any and all rights pursuant to the Loan Documents, including but not limited to, acceleration and foreclosure of the Note, and, since July 27, 2016, Lender is entitled to charge for, and collect, interest at the stipulated rate in the Loan Documents of eighteen percent (18%) per annum (the "Maximum Rate"), which interest shall accrue from and after the date on which the first Event of Default occurred under any one or more of the Loan Documents until May 30, 2023 (the "Extended Maturity Date"). Borrower waives any and all rights, defenses, or claims to contest Lender's right and entitlement to charge for, and collect, interest at the Maximum Rate from and after the first Event of Default under

any one or more of the Loan Documents.

3. Lender shall provide Borrower a credit towards the then-outstanding indebtedness in the amount of the default interest as stipulated herein, if, and only if, (i) Lender receives payment in full of the indebtedness then owed, less default interest on or before the Extended Maturity Date, and (ii) a Termination Event after the date of this Loan Modification Agreement has not occurred. Each of the following shall be defined as a "Termination Event":

a. Borrower or any affiliate of Borrower with a legal, beneficial, or equitable ownership interest in the Property shall commence a voluntary proceeding, or an involuntary proceeding shall be commenced against the record owner of the Property seeking liquidation, receivership, reorganization, or other relief with respect to Borrower under any bankruptcy, insolvency, or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official of it or a substantial part of its respective property or the Property itself.

b. The commencement of litigation or legal proceedings against Borrower by any third party claiming ownership or some form of interest to the Property.

c. The filing or commencement of any indictment, charge or proceeding, whether criminal or civil, pursuant to Federal or state law against Borrower.

d. The posting for foreclosure sale of the Property by any third party other than Lender.

For the avoidance of doubt, Lender shall not be obligated to waive default interest should a Termination event occur on or after the date of this Loan Modification Agreement.

4. The Note may be prepaid in its entirety, but not in part, upon payment to Lender of a fee in an amount (the "<u>Prepayment Premium</u>") which is equal to an amount, never less than zero, equal to the present value of series of Monthly Amounts, assumed to be paid each month remaining from the prepayment date through the Extended Maturity Date assuming an interest rate of fifteen percent (15.0%), discounted at the U.S. Securities Rate. The "Monthly Amount" is the Interest Rate minus the U.S. Securities Rate. The "U.S. Securities Rate" as of the prepayment date, as that rate published by the Federal Reserve System in its "Statistical Release H.15(519), Selected Interest Rates" under the caption "U.S. Government Securities/Treasury Constant Maturities," for a U.S. Government Security with a term equal to that remaining on this Note on the prepayment date (which term may be obtained by interpolating between the yields published for specific whole years), divided by twelve and the quotient then multiplied by the amount prepaid on the prepayment date.

5. It is the intention of Lender to comply strictly with all applicable usury laws, and there is no intention to contract for, nor shall there ever be collected, charged or received on this Note, interest in excess of that which would accrue and be payable on the basis of the maximum non-usurious rate permissible under the laws of the State of Texas or the United States, whichever is lower (the "<u>Highest Lawful Rate</u>"). Further, if under any circumstances the aggregate amounts paid on this Note include amounts which by law are deemed interest and which would exceed the maximum non-usurious amount of interest which could lawfully have been collected on this Note, Borrower stipulates that such payment and collection will

have been and will be deemed to have been the result of mathematical error on the part of both Borrower and Lender, and Lender shall promptly apply the amount of such excess to reduce the outstanding principal balance on this Note and refund to Borrower any balance of such excess remaining after such application. All sums paid, or agreed to be paid, under this Note to Lender for the use, forbearance or detention of the proceeds in the amount evidenced by this Note shall, to the fullest extent permitted under applicable law, be amortized, prorated and spread throughout the full term of this Note until paid in full, so that the actual rate of interest applicable during the term of this Note is uniform and does not exceed the Highest Lawful Rate. To the extent the Maximum Rate ever exceeds the maximum non-usurious rate permissible under the laws of the State of Texas or the United States, the lowest of these rates shall determine the amount of interest Lender may charge on the indebtedness.

6. If Borrower defaults in the prompt payment when due of any amount due under the Note, Deed of Trust, this Modification or any other Loan Document relating to the amounts due hereunder or there under including but not limited to the Prepayment Premium (the "Indebtedness"), or otherwise defaults under the Note, Deed of Trust, this Agreement or any other document evidencing or securing the Indebtedness, or any portion thereof, or if Borrower shall fail to pay any part of any other indebtedness to any other person or entity; or if Borrower shall fail to keep and perform any of the covenants or agreements contained in any Loan Document (including this Modification); or if Borrower shall file a voluntary petition in bankruptcy, or make an assignment for the benefit of any creditor, or is adjudicated a bankrupt or insolvent; or if there is any commencement of any proceeding which seeks the liquidation, reorganization or other similar relief with respect to Borrower or its debts or other liabilities under any bankruptcy, insolvency or other similar law or laws now or hereafter in effect; or if there is the commencement of any proceeding which seeks the appointment of a trustee, receiver, liquidator, custodian or other similar official of Borrower or over any of its property, including the Property; then Lender shall have the right, but not the obligation, to declare the entire Indebtedness immediately due and payable, including, without limitation, any and all Default Interest or other charges due under any Loan Document, including this Modification, whereupon the Indebtedness immediately shall be due and payable without notice or demand, and Lender further shall have the right, but not the obligation, and without any notice whatsoever to Borrower, to immediately enter upon and take exclusive possession of the Property and thereafter manage, use, lease and otherwise operate same in such manner and by and through such persons, objects, or employees as it may deem proper and necessary.

7. If Borrower fails to insure the Property in such amounts and with such carrier(s) as Lender may reasonably require, or fails to pay any or all ad valorem taxes and/or assessments against the Property, including interest and penalties, or if Lender enters and takes possession, whether actual or constructive, of the Property following any default or Event of Default by Borrower or Guarantor under any Loan Document, including this Modification, then Lender shall have the right, but not the obligation, to pay any such amounts thereby due and/or owing, or otherwise required as a result of any such act or event, and such fees, expenses and other amounts, including reasonable and necessary attorney's fees and court costs, shall be added to the Indebtedness and shall bear interest at the Maximum Rate (unless the Highest Lawful Rate is less than the Maximum Rate) from the date such costs are incurred.

8. In the event Borrower ever files suit, or otherwise asserts any claim, against the Lender with respect to any matters set forth herein, Borrower agrees that Lender shall be entitled to charge a one-time fee of twenty percent (20%) of the then-outstanding principal balance, as Lender's reasonable and necessary attorney's fees (the "Percentage Fee"), and such amount shall be added to the Indebtedness and shall bear interest at the Maximum Rate (unless the Highest Lawful Rate is less than the Maximum Rate) from the date such Percentage Fee is assessed. Borrower further agrees that Lender shall be entitled to charge such Percentage Fee if Lender ever is required to litigate in any judicial or quasi-judicial forum, including arbitration, any claim arising out of, relating to, or otherwise touching upon, this Modification or any other Loan Document, regardless of whether such claim is asserted by Borrower. In the event a court of competent jurisdiction should determine that such a fee is unreasonable or unnecessary, then Borrower agrees not to contest or otherwise challenge any hourly fee charged by Lender's attorneys and other professionals engaged by Lender in connection with the enforcement of Lender's rights hereunder. Borrower agrees that Lender's right to its attorney's fees pursuant to this paragraph, whether as a Percentage Fee or not, shall attach to any claim brought against Lender by any person who challenges, or attempts to delay, impede or otherwise interfere with, or delays, impedes, or otherwise interferes with, in any manner or way whatsoever, Lender's right to foreclose on the Property, regardless of whether such person is a party to this Modification or any other Loan Document.

9. All capitalized terms used herein but not otherwise defined shall have the same meaning given to them in the Loan Documents.

10. This Agreement and the other Loan Documents are performable in Harris County, Texas, which shall be a proper place of venue for suit on or in respect of this Agreement. Borrower and Guarantor irrevocably agree that any legal proceeding relating to this Agreement or the other Loan Documents shall be brought in the United States District Court for the Southern District of Texas, Houston Division, including, without limitation, any bankruptcy proceeding. Notwithstanding anything to the contrary herein the applicable state law related to the Promissory Note and Loan Documents is changed hereby from the State of Texas to the Commonwealth of Virginia, effective immediately.

11. In the event of any dispute, controversy, claim, or demand arising out of or relating to this Agreement or any other Loan Documents or Property, whether in contract, tort, or otherwise, at law or in equity, for damages or any other relief, the parties shall first attempt to settle the dispute by mediation.

12. Nothing herein shall prohibit Lender from posting the Property for a foreclosure sale.

13. Except as provided herein, the terms of the Note, Deed of Trust, Modification Agreement and Guaranty shall continue ineffect.

[Signatures on Next Page]



AZ 000873

WCW005300

WITNESS THE EXECUTION HEREOF this 11 day of June, 2018.

TEXAS REIT, LLC,
a Texas limited liability company

By: ______________________
Ali Choudhri, Manager

Dalio I, LLC,
a Texas limited liability company

By: ______________________
Azeemeh Zaheer, Authorized Agent

GUARANTOR:

______________________
Ali Choudhri, individually

WITNESS THE EXECUTION HEREOF this 11 day of June, 2018.

TEXAS REIT, LLC,
a Texas limited liability company

By: ______________________
Ali Choudhri, Manager

Dalio I, LLC,
a Texas limited liability company

By: ______________________
Azeemeh Zaheer, Authorized Agent

GUARANTOR:

______________________
Ali Choudhri, individually

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **TEXAS REIT, LLC** | § | **CASE NO. 24-10120-smr** |
| **Debtor.** | § | **Chapter 11** |
| | § | |
| **WCW HOUSTON PROPERTIES, LLC** | § | |
| **Plaintiff,** | § | |
| | § | **ADV. NO. 24-01045-smr** |
| **v.** | § | |
| | § | |
| **TEXAS REIT, LLC,** | § | |
| **DALIO HOLDINGS I, LLC,** | § | |
| **DALIO HOLDINGS II, LLC,** | § | |
| **GREG MILLIGAN, TRUSTEE and** | § | |
| **TRAVIS VARGO, RECEIVER** | § | |
| **Defendants.** | § | |

**SWORN DECLARATION OF SERVICE**

My name is **Guy Connelly**. I am over the age of eighteen (18), I am not a party to this case and, as a disinterested person, I have no interest in the outcome of this case. I am in all ways competent to make this affidavit and this affidavit is based on personal knowledge. The facts stated herein are true and correct. My business address is: **207 S. BUFFALO ST. #77, CANTON, TX 75103, U.S.A.**

ON **Friday, August 28, 2026** AT **06:35 PM - Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding), Proof of Service, Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13), Exhibit "1", Exhibit 1-A, Exhibit 1-B, $40 Witness Fee; Ali Choudhri** came to hand for service upon **Ali Choudhri**

On Monday August 31, 2026 at 09:20 AM - The above named documents were hand delivered to: Ali Choudhri @ 1100 Commerce Street, Room 1452, Dallas, TX 75242, in Person.

**FURTHER AFFIANT SAYETH NOT.**

STATE OF TEXAS DECLARATION

"My name is **Guy Connelly,** I am over the age of Eighteen, my business address is 207 S. BUFFALO ST. #77, CANTON, TX 75103, U.S.A., and I declare under penalty of perjury that this affidavit is true and correct."

Executed in **0 County, State of Texas on Monday, August 31, 2026**

**Guy Connelly**
**PSC# 2201**
**EXP. 9/30/2026.**
Declarant; Appointed in accordance with State Statutes.

Fees: $209.00

# EXHIBIT B

Text messages with M. Kevin Powers
(June 3, 2020 and September 25, 2026)

Jun 3, 2020 at 6:24 PM

Got the consent?

Read

Friday 9:30 AM

Are you intending to appear for the deposition Monday? If you have counsel please direct me to him.

I'm unaware. No one checked with me

Please email me

Ali@jetallcapital.com

Delivered

I will send you a copy of the subpoena we served you with to this email

# EXHIBIT C

Email thread, "Deposition of Ali Choudhri"
September 25-28, 2026

**From:** Ali Choudhri <ali@jetallcapital.com>
**Sent:** Friday, September 25, 2026 11:45 AM
**To:** Powers, Kevin <kpowers@spencerfane.com>
**Subject:** [EXTERNAL] Re: Deposition of Ali Choudhir

**[Warning] This E-mail came from an External sender. Please do not open links or attachments unless you are sure it is trusted.**

Kevin,

Per our call, please provide me with some dates that may work for you and others.

As we discussed I cannot be in two places at once. Furthermore, I first became aware of this deposition today when you texted me this morning

You have never asked about my availability nor conferred dates with me.

You have had my email and cell phone number for many years. You are aware I am pro se.

If I have stated anything inaccurately please let me know

Thank you

Please confirm ASAP

On Fri, Sep 25, 2026 at 3:18 PM Powers, Kevin <kpowers@spencerfane.com> wrote:

You are obligated to appear Monday. We will work to accommodate date you. If the 30th won't work, provide another date in the next 2 weeks that will.

Right now the 8th and 9th appear available. Let me know if those would work.

We aren't going to leave this open ended. We either agree to a date now, or I will proceed Monday.

---

**From:** Ali Choudhri <ali@jetallcapital.com>
**Sent:** Friday, 25 September 2026 15:12:18
**To:** Powers, Kevin <kpowers@spencerfane.com>
**Subject:** Re: [EXTERNAL] Re: Deposition of Ali Choudhir

**[Warning] This E-mail came from an External sender. Please do not open links or attachments unless you are sure it is trusted.**

---

I was not notified. First time is your text this am which I immediately responded to.

I am not available next week.

I am willing to discuss a mutually convenient time.

**O** 713.552.1234 **D** 713.212.2638
kpowers@spencerfane.com | spencerfane.com

BOARD CERTIFIED I CIVIL TRIAL LAW I TEXAS BOARD OF LEGAL SPECIALIZATION

American Board
of Trial Advocates

**From:** Ali Choudhri <ali@jetallcapital.com>
**Sent:** Friday, September 25, 2026 4:36 PM
**To:** Powers, Kevin <kpowers@spencerfane.com>
**Subject:** Re: [EXTERNAL] Re: Deposition of Ali Choudhir

**[Warning] This E-mail came from an External sender. Please do not open links or attachments unless you are sure it is trusted.**

---

**Also, you said you alread had my depositions from before on this same matter. So why do you need it again?**

**On Fri, Sep 25, 2026 at 3:34 PM Ali Choudhri <ali@jetallcapital.com> wrote:**

**I am not interested in any argument rather a time that works for us all**

**19th, 26, or 27th of October**

**Please confirm ASAP**

# RE: [EXTERNAL] Re: Deposition of Ali Choudhir External Inbox

Summarize this email

**Powers, Kevin** Sep 25
to me, Eric, Leslie, Stephen

We need your testimony in presentable form in federal court. There have also been developments since your last deposition, so there is new ground to cover.

This is the last opportunity I'm providing. The 26th works for everyone. Either agree to appear on that date and the order I've requested, or we'll do this the hard way. I've been as accommodating as I am willing to be.

Also, please reply to all. There are other parties to this case, and I want to keep the informed.

M. Kevin Powers Partner
Spencer Fane LLP

3040 Post Oak Blvd., Suite 1400| Houston, TX 77056-6560
**O** 713.552.1234 **D** 713.212.2638
kpowers@spencerfane.com | spencerfane.com

BOARD CERTIFIED I CIVIL TRIAL LAW I TEXAS BOARD OF LEGAL SPECIALIZATION

American Board
of Trial Advocates

# Re: [EXTERNAL] Re: Deposition of Ali Choudhir

me 8:02 AM
to Kevin, Eric, Leslie, Stephen

**Kevin,**
**October 26 works for me. As you noted, it is one of the dates I proposed on Friday. Please confirm that today's deposition is canceled and reset to October 26**
**Please send me the proposed order you referenced so I can review it. I'm not able to agree to an order I haven't seen, but I will respond promptly once I receive it.**

**Also, I want to note you've had my cell and email address. You texted me and contacted me for the very first time since 2020 on Friday morning September 25, 2026.**

**Thank you**

**On Fri, Sep 25, 2026 at 4:41 PM Powers, Kevin <kpowers@spencerfane.com> wrote:**

We need your testimony in presentable form in federal court. There have also been developments since your last deposition, so there is new ground to cover.

This is the last opportunity I'm providing. The 26th works for everyone. Either agree to appear on that date and the order I've requested, or we'll do this the hard way. I've been as accommodating as I am willing to be.

Also, please reply to all. There are other parties to this case, and I want to keep the informed.

M. Kevin Powers Partner
Spencer Fane LLP

# RE: [EXTERNAL] Re: Deposition of Ali Choudhir External Inbox

Summarize this email

**Powers, Kevin** 8:16 AM
to me, Eric, Leslie, Stephen

Will you agree to an order compelling your appearance on the 26th? If not, I have to proceed and get a CNA today.

M. Kevin Powers Partner
Spencer Fane LLP

3040 Post Oak Blvd., Suite 1400| Houston, TX 77056-6560
**O** 713.552.1234 **D** 713.212.2638
kpowers@spencerfane.com | spencerfane.com

BOARD CERTIFIED I CIVIL TRIAL LAW I TEXAS BOARD OF LEGAL SPECIALIZATION

American Board of Trial Advocates

**From:** Ali Choudhri <ali@jetallcapital.com>
**Sent:** Monday, September 28, 2026 8:02 AM
**To:** Powers, Kevin <kpowers@spencerfane.com>
**Cc:** Eric Terry <eric@howley-law.com>; Leslie Luttrell <luttrell@lclawgroup.net>; Stephen Lemmon <lemmon@slollp.com>
**Subject:** Re: [EXTERNAL] Re: Deposition of Ali Choudhir

# EXHIBIT D

Declaration of Ali Choudhri

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

In re: Subpoena to Ali Choudhri issued in *In re Texas REIT, LLC,* Case No. 24-10120-smr, and *WCW Houston Properties, LLC v. Texas REIT, LLC, et al.*, Adv. No. 24-01045-smr (Bankr. W.D. Tex.)

Misc. Proceeding No. ____________

**EXHIBIT D — DECLARATION OF ALI CHOUDHRI**

1. My name is Ali Choudhri. I am over eighteen years of age and have personal knowledge of the facts stated here. I am not a party to Adv. No. 24-01045-smr.

2. On Friday, September 25, 2026, at about 9:30 a.m., M. Kevin Powers texted me asking whether I intended to appear for a deposition Monday. Exhibit B is a true copy of that text exchange.

3. On the morning of August 31, 2026, I was at 1100 Commerce Street, Dallas, Texas, attending a hearing before the Honorable Michelle V. Larson in Courtroom 1424 of the United States Bankruptcy Court for the Northern District of Texas. I was never in Room 1452, the Clerk's Office of the United States District Court for the Northern District of Texas, at any time that day. I was not served with this subpoena. I was not tendered or paid any witness fee or any mileage in connection with it.

4. I did not become aware of a deposition set for September 28, 2026 until September 25, 2026.

5. Mr. Powers has had my cell phone number and email address for years. Before September 25, 2026, he had not contacted me since 2020, and no one contacted me to confer about the date, place, or scope of this deposition.

6. Exhibit C is a true copy of my September 25–28, 2026 emails with Mr. Powers. I spoke with him by phone on September 25. I proposed October 19, 26, or 27, 2026. On September 28 at 8:02 a.m., I accepted October 26 and asked for a copy of the order he referenced. I have not received that proposed order.

7. I have been deposed previously in connection with this matter.

8. The documents requested in Exhibit 1 to the subpoena are records of Texas REIT, LLC, Dalio Holdings I, LLC, and Dalio Holdings II, LLC, each of which is a defendant in the adversary proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 28, 2026, in Harris County, Texas.

*/s/ Ali Choudhri*

Ali Choudhri